## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| TODD JEUDE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| UNITED STATES, | ) | |
| UNITED STATES MARSHALS | ) | |
| SERVICE, | ) | Case No. 24-cv-1227-DWD |
| JOHN DOES 1-2, | ) | |
| PULASKI CNTY., ILL., | ) | |
| WARDEN SCOTT SPURLOCK, | ) | |
| CAPTAIN ADKINS, | ) | |
| LIEUTENANT QUINN, | ) | |
| MS. MIKEAL, | ) | |
| MS. LYNETTE, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff Todd Jeude brings this civil rights action pursuant to 42 U.S.C. § 1983 for

alleged deprivations of his constitutional rights while confined at the Pulaski County

Jail.[1]  (Doc. 9).  Plaintiff claims that the Defendants have utterly failed to provide care for

a serious dental injury or infection for more than a month.

---

[1] Plaintiff alleges that he is a pretrial detainee, but also states he is detained awaiting a ruling on the revocation of his supervised release.   The distinction does not matter for the initial review of his pleading, but later it will matter because pretrial detainee's deliberate indifference claims are analyzed under the Fourteenth Amendment and are given more deference that deliberate indifference claims by convicted individuals that are analyzed under the Eighth Amendment.  *See e.g., McAdory v. Scofield*, 2024 WL 2774989 at * 1 (E.D. Wisc. May 30, 2024) (finding that claims by a pretrial detainee facing the revocation of supervised release should be analyzed under the Fourteenth Amendment); *see also, Grissom v. Watson*, 2023 WL 2263636 at *4 (S.D. Ill. Feb. 28, 2023) (discussing the possibility that a pretrial detainee facing revocation may qualify for review under the Eighth or Fourteenth Amendment standards).

Plaintiff's Complaint (Doc. 1) is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A.  Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims.  *See* 28 U.S.C. § 1915A(a)-(b). Section 1915A applies equally to individuals in pretrial detention, and those who have already been convicted.  Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed.  28 U.S.C. § 1915A(b).  At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed.  *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## Analysis

Plaintiff alleges that in February of 2024 he broke his tooth and exposed a nerve. (Doc. 1 at 7).  He was in the process of seeking treatment covered by his insurance when he was arrested on February 24, 2024, and was placed at the Pulaski County Jail ("the Jail").  During the booking process he disclosed his dental issue, showed the nurses, and explained that he was in extreme pain.  They agreed his gum may be infected and recommended Ibuprofen and antibiotics.  (Doc. 1 at 8).  On February 27, 2024, Plaintiff began the medications, but was only called to receive doses for ten days of amoxicillin at night.  During this time, he did not see any dental provider.

On March 10, 2024, the pain had intensified and was worse than ever.  (Doc. 1 at 8).  Plaintiff was given a second course of antibiotics for 10 days.  This second course included morning and evening doses and continued thru March 20, 2024.  During the course of antibiotics, Plaintiff did not see any dental professional.

At some point Plaintiff saw nurse Chelsea (a non-party). Chelsea informed him that he had not yet been referred to a dentist because the United States Marshals Service (USMS) had to approve all outside dental visits. He complained the pain was so intense that it sometimes woke him at night or prevented him from falling asleep. (Doc. 1 at 9). After 30 days without seeing a dentist, Plaintiff inquired further. Chelsea informed Plaintiff that Defendant Ms. Lynette was in charge of making sure that referral slips were transmitted to the USMS, and that Ms. Mikeal supervised this process. Every 30 days a limited number of detainees are taken to an outside dentist. (Doc. 1 at 9). The detainees taken to the dentist are selected by medical technicians or LPNs with no dental training. (Doc. 1 at 10).

Plaintiff asked another non-party nurse how the system worked, and that nurse told him the USMS would not pay for anything. (Doc. 1 at 10). During this time, Plaintiff became aware that numerous other detainees had also experienced massive delays in securing dental care. Around April 2, 2024, Plaintiff told nurse Chelsea that he needed emergency care because his pain was unbearable, his face was swollen, and his gums were red. (Doc. 1 at 10). Despite this, she said there was nothing she could do because per the policy her only option was to examine him and to report that outcome. Even once he was approved for care, she advised it could be up to 30 days before he was seen.

On April 7, 2024, Plaintiff asked the Jail administration to intervene. He alleges that by this time he had not received responses from medical supervisors—Defendants Mikeal or Lynette—so he used a general request form on the kiosk to contact other Jail staff. (Doc. 1 at 11). His request was denied, and he was directed back to the medical

request process.  On April 11, 2024, Plaintiff appealed the issue and explained to Defendant Captain Adkins that he was unable to get medical care.  Captain Adkins denied his appeal and explained that security staff had no control over the medical staff. (Doc. 1 at 12).

On April 6, 2024, Plaintiff also filed a medical grievance directly to Defendant Warden Scott Spurlock.  He explained his situation in detail, but Defendant Adkins denied this request.  Plaintiff appealed this outcome, but Warden Spurlock took no action and forwarded his grievance to the medical department.  (Doc. 1 at 12).

Following his unsuccessful attempts to seek assistance from prison administrators, Plaintiff continued to make regular requests to medical staff.  (Doc. 1 at 12).  The nurses sometimes brought him saltwater rinses, but these were ineffective for his pain.

On April 20, 2024, Plaintiff filed another kiosk request the Warden, and attached the 30-day dental policy.  He emphasized that he was suffering serious dental pain, that he had an exposed nerve, that his tooth was decaying below the gum line, and that he had problems sleeping and chewing.  Defendant Lieutenant Quinn answered the "attack" on the dental policy and did not forward it to the Warden or offer the option to appeal. (Doc. 1 at 13).  On April 24, Plaintiff asked for copies of his grievances, but Quinn denied his request.  On April 25, Plaintiff asked Quinn verbally about his situation and was told that Adkins and the Warden knew about it, that he was being treated pursuant to policy, and that nothing further could be done.  (Doc. 1 at 13-14).

On April 25, 2024, Plaintiff was escorted by John Does 1 and 2 to a court appearance in the Eastern District of Missouri.  (Doc. 1 at 14).  He reported his condition

to John Doe 1 and was told there was no medical supervisor and there was nothing he could do.  Plaintiff also disclosed his condition to John Doe 2, who showed concern but otherwise did nothing to put him in touch with a medical officer or supervisor.  (Doc. 1 at 14).

Throughout April 2024, Plaintiff made over 20 total medical requests to the medical department and the Jail administration.  The nurses did try to help him, but they would not approve any emergency care and continuously told him he needed to wait for the monthly dental visits.  As of April 26, 2024, Plaintiff had yet to receive dental care despite being assured by a non-party nurse that he was on the list to go see the dentist. He alleges that he is in severe pain and is on the verge of a breakdown related to his ongoing suffering.  He claims that the financial bottom line is being prioritized over his well-being.  He claims the "government, the county, the USMS, and the Warden have a policy in place to save money and deter detainees from seeing dental assistance."  (Doc. 1 at 16).

Following the factual narrative, Plaintiff provides 14-pages of legal arguments.  He argues for individual liability on behalf of the named defendants, as well as official liability under a *Monell* theory of recovery.   Plaintiff alleges that the Jail and Jail officials have a policy of maintaining no on-site dentist, and that this policy has directly harmed him.  (Doc. 1 at 26).  He further alleges that there is a policy of only approving a limited number of detainees for care each month, and that the Warden knows and approves of these policies despite knowing they cause harm.  (Doc. 1 at 26-27).  Plaintiff also faults

the Jail and Jail administrators for failing to respond to or act upon his grievances related to dental problems.

In support of the complaint, Plaintiff submitted handwritten copies of grievances, an affidavit, and a general log of his medical encounters.

Based on the allegations in the Complaint, the court designates the following Claims:

> **Claim 1:**    **Eighth or Fourteenth Amendment deliberate indifference claim against Defendants Spurlock, Adkins, Quinn, Mikeal, and Lynette for failing to address Plaintiff's dental injury/infection from February 24, 2024-present;**

> **Claim 2:**    **_Monell_ claim against Pulaski County, Spurlock, Adkins, Mikeal and Lynette for their roles in failing to maintain a full-time dentist and/or failing to schedule timely appointments for dental care;**

> **Claim 3:**    **_Bivens_ claim against the USMS and John Does 1 and 2 for their role in failing to secure dental care.**

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court.  Any claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under _Twombly_.  _See Twombly_, 550 U.S. at 570 (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face").

## Discussion

For now, the Court will accept Plaintiff's contention that as an individual detained pending revocation, his claims should be analyzed under the Fourteenth Amendment.

Medical care for pretrial detainees is assessed under a more stringent standard than medical care for convicted individuals. *See e.g. Miranda v. County of Lake*, 900 F.3d 335, 350 (7th Cir. 2018) (articulating applicable standard for pretrial detainee's claim of inadequate medical care); *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (articulating the deliberate indifference standard for a convicted individual).

Plaintiff alleges that for each individually named defendant—Defendants Spurlock, Adkins, Quinn, Mikeal, and Lynette—he repeatedly informed them that he was in serious pain from his dental issue, but they refused timely and meaningful care. While administrators can defer to medical professionals, Plaintiff alleges that these individuals all knew that there were no qualified dental professionals on staff to assess his needs, and they knew that the limited care he had been provided at the facility was insufficient. Rather than investigate his situation, he was repeatedly directed back to the medical staff by Spurlock, Adkins and Quinn. At this early juncture, these allegations are sufficient to proceed on Claim 1 against Defendants Spurlock, Quinn, Adkins, Mikeal and Lynette.

In Claim 2, Plaintiff alleges that Pulaski County, Warden Spurlock and medical administrators Mikeal and Lynette are responsible under *Monell* for maintaining policies, customs, or practices that have caused him to suffer extensively from his dental issues. Significantly, they do not maintain a qualified dental professional on staff, and they only allow a few detainees a month to be taken out to see a dentist. He alleges these policies, customs or practices have harmed numerous detainees at the Jail.

Under *Monell v. Dept. of Social Serv.*, 436 U.S. 658 (1978), a plaintiff may bring a § 1983 suit against a county when its actions violate the Constitution. *Hall v. City of Chicago,*

953 F.3d 945, 950 (7th Cir. 2020); *see also Deeren v. Anderson*, 72 F.4th 229, 237 (7th Cir. 2023).  To ultimately succeed on a *Monell* claim, the plaintiff must "prove three elements: (1) an action pursuant to a municipal policy, (2) culpability, meaning that policymakers were deliberately indifferent to a known risk that the policy would lead to constitutional violations, and (3) causation, meaning the municipal action was the 'moving force' behind the constitutional injury." *Hall*, 953 F.3d at 950.  "These requirements—policy or custom, municipal fault, and 'moving force' causation—must be scrupulously applied in every case alleging municipal liability" to avoid collapsing municipal liability into respondeat superior liability. *First Midwest Bank Guardian Estate of LaPorta v. City of Chicago*, 988 F.3d 978, 987 (7th Cir. 2021).

At this preliminary juncture, Plaintiff has presented sufficient allegations to proceed against Pulaski County, and Defendants Spurlock, Mikeal and Lynette concerning their alleged roles in maintaining the policies or practices regarding dental staffing and monthly dental appointments.  He alleges that these practices or policies directly impacted his ability to get urgent care, the defendants knew of this issue both generally and in relation to his needs, and that the harmful effects of these policies or practices extends beyond his personal experience to other detainees.  Ultimately, this claim will require the consideration of significant evidence, including an analysis of whether each defendant had the requisite status as a policymaker for purposes of *Monell*. *See e.g., Childress v. Walker*, 787 F.3d 433, 440 (liability can attach for an official responsible for setting a policy if the policy causes a constitutional deprivation).

In Claim 3, Plaintiff faults the USMS and two individual Marshals who brought him to a Court appearance, for failing to help him secure dental care.  As to the USMS, Claim 3 cannot succeed, because neither *Bivens* nor FTCA liability extends to the government entity itself.  *See e.g.*, *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 72 (2001) (a prisoner may bring a claim against an individual officer, not the officer's employer be it the United States or another government entity).  Plaintiff has now moved to dismiss the USMS as a defendant, and his Motion (Doc. 12) is **GRANTED** because a claim against the entity itself is not proper.   The USMS will be terminated as a party.

By contrast, Plaintiff is correct that John Does 1 and 2 are individual employees that may be subject to damages under *Bivens*.   Further, deliberate indifference to a medical need is an area of constitutional harm that the Supreme Court has recognized is a valid basis for potential recovery under *Bivens*. *Carlson v. Green*, 446 U.S. 14 (1980); *but see* *DeBenedetto v. Salas*, 2023 WL 6388127 at *3-4 (N.D. Ill. Sept. 29, 2023) (discussing the possibility that pretrial detainees may fall under a different standard that that identified in *Carlson*, and thus may constitute a new context for recovery not permissible under *Bivens*).  To establish a standard deliberate indifference claim, a Plaintiff must show that he or she had a serious medical condition, and that the defendant actually knew of and disregarded a serious risk of harm.  *See e.g.*, *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

Here, Plaintiff indicates he briefly asked John Does 1 and 2 about his dental situation and he faults them for failing to either alert another official or for failing to give him contact information to seek further assistance on his own behalf.  As individuals who only briefly interacted with Plaintiff on a single occasion in the midst of a months-long

problem, the Court does not find at this early juncture that the allegations are sufficient to proceed against John Does 1 and 2 for their very brief interaction with Plaintiff.  In the very limited context of transporting Plaintiff to a court proceeding, the Court does not find it plausible that either of these individuals might have appreciated the seriousness of Plaintiff's dental situation, nor is it likely they truly intended to cause him harm as opposed to perhaps acting negligently by not securing further care for him.  As such, Claim 3 will be dismissed in full for failure to state a claim.

## Miscellaneous Motions

Plaintiff's Motion to Appoint Counsel (Doc. 2) is **DENIED without prejudice**. *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007).  The district court has discretion under 28 U.S.C. § 1915(e)(1) to recruit counsel for an indigent litigant.  *Ray v. Wexford Health Sources, Inc.*, 706 F.3d 864, 866-67 (7th Cir. 2013); *Romanelli v. Suliene*, 615 F.3d 847, 851 (7th Cir. 2010).  When presented with a request for counsel, the court considers whether a plaintiff has made reasonable attempts to secure counsel and, if so, "whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it."  *Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013) (quoting *Pruitt*, 503 F.3d at 655).  Plaintiff has not provided any proof that he attempted to retain counsel on his own behalf, which is a prerequisite to apply for recruited counsel in a civil case.  Additionally, given the early stage of this case and the plaintiff's demonstrated ability to prepare and file his complaint with relevant supporting evidence, this Court is not inclined to recruit counsel for plaintiff yet.  If the case becomes too difficult to litigate as it proceeds, Plaintiff may renew his request by filing a new motion,

but he should include evidence of his efforts to contact at least three attorneys or law firms about representation in this case.  For now, Plaintiff's Motion (Doc. 2) is **DENIED**.

Plaintiff's Motion for Copies (Doc. 8) is **GRANTED**.  Plaintiff seeks a copy of his Complaint, and alleges he made best efforts at the jail to get a copy.  Plaintiff will receive a one-time courtesy copy.  If he needs future copies of documents in this case, he will be required to pay the fee of $0.50 per page.

Plaintiff's Motion for Caselaw Material (Doc. 10) and his Motion for Copies of Case Law Material (Doc. 11) are DENIED.  Plaintiff seeks free copies of the docket sheets for four specified civil cases, as well as future permission for copies of up to 200 more cases. He argues that if he is provided with these materials he will be more well-equipped to pursue this matter, and he is qualified to receive them for free because he was granted *in forma pauperis* status.    He also cites to Rule 706, which the Court interprets to mean Federal Rule of Evidence 706.  Rule 706 governs a Court's authority to appoint expert witnesses, though Plaintiff makes no discussion of any expert at this point.  Plaintiff's Motions will be **DENIED**.  In forma pauperis status does not automatically entitle a litigant to free materials of their choosing.  Under 28 U.S.C. § 1915 an inmate may be authorized to commence an action by prepaying a fee, the court shall issue and serve process, and the court may recruit counsel if appropriate, but the statute does not provide that the Court shall supply requested legal materials or supplies.  Plaintiff must utilize the resources available at his facility's local law library to pursue this matter.

### Disposition

**IT IS HEREBY ORDERED THAT Claim 1** of the Complaint (Doc. 1) survives initial screening as described above against Defendants Scott Spurlock, Captain Adkins, Lieutenant Quinn, Ms. Mikeal and Ms. Lynette in their individual capacities, and **Claim 2** survives against Defendants Pulaski County, Illinois, Spurlock, Mikeal, and Lynette in the official capacities. By contrast, **Claim 3** is dismissed for failure to state a claim. The Clerk of Court is **DIRECTED** to **TERMINATE** Defendants the United States, the United States Marshals Service, John Doe 1 and John Doe 2 because Plaintiff has failed to plead a sufficient claim against these defendants.

The Clerk of Court is **DIRECTED** to prepare for Defendants Scott Spurlock, Captain Adkins, Lieutenant Quinn, Ms. Mikeal, Ms. Lynette, and Pulaski County, Illinois: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 1), and this Memorandum and Order to Defendants' place of employment as identified by Plaintiff. If Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for

sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merits Review Order.**

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* was granted.  *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that he is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than 14 days after a transfer or other change of address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for failure to prosecute. FED. R. CIV. P. 41(b).

Based on the allegations in the Complaint, the Clerk of Court is **DIRECTED** to enter the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

Plaintiff's Motion for Counsel (Doc. 2) is **DENIED** without prejudice.

Plaintiff's Motion for a Copy (Doc. 8) is **GRANTED**, and the Clerk of Court is **DIRECTED** to send him a copy of the Complaint (Doc. 1).

Plaintiff's Motions for Case Law (Docs. 10, 11) are **DENIED**.

Plaintiff's Motion to Dismiss (Doc. 12) is **GRANTED**.

**IT IS SO ORDERED.**

Dated: July 8, 2024                      /s *David W. Dugan*

_____

DAVID W. DUGAN
United States District Judge

<u>Notice to Plaintiff</u>

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least 60 days from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take 90 days or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.

The Court wishes to remind the Plaintiff that litigation is often viewed a series of hurdles that the Plaintiff must clear to get to another hurdle. Initial screening is such a hurdle, but it is a very low one for the Plaintiff to clear.  As noted above, surviving initial screening only requires the bare statement of a claim that, if proven, could entitle Plaintiff to some relief. At trial, he will need to prove by a preponderance of evidence that the facts alleged actually occurred and that those facts satisfy the legal requirements for recovery. Trial is the highest and most difficult of hurdles for any Plaintiff to clear.